### Doran v. Brooklyn & N. Y. Ferry Co.

*(City Court of Brooklyn, General Term.  May 23, 1892.)*

CARRIERS—EJECTION OF PASSENGERS—EXCESSIVE DAMAGES.

While waiting at a steamboat ferry, the gates were forced open by the crowd, and plaintiff was involuntarily carried within, and while there a deck hand came up and seized plaintiff by the coat, but released him on expostulation.  Another employe of the ferry then came up, and seized plaintiff by the shirt collar, and pushed him out of a side gate, though plaintiff had offered to pay fare or leave. *Held*, no malice being shown, that a verdict for $1,500 was excessive.

Appeal from trial term.

Action by William J. Doran against the Brooklyn & New York Ferry Company.  From a judgment for plaintiff, defendant appeals.  Modified.

Argued before OSBORNE and VAN WYCK, JJ.

*Jas. & T. H. Troy*, for appellant.  *Wm. J. Driscoll*, for respondent.

OSBORNE, J.  Plaintiff brought this action to recover damages for an assault and battery, alleged to have been committed on him by the servants of the defendant in ejecting him from its ferry house at the foot of East Twenty-Third street, New York, on the 19th day of February, 1891.  Plaintiff obtained a verdict for $1,500 damages, and from the judgment entered thereon, and from an order denying a motion for a new trial, this appeal is taken.  Substantially the main point contended for by the learned counsel for the appellant on this appeal is that the damages awarded were excessive, and that, for that reason, the judgment should be reversed.  It appeared from the evidence that plaintiff arrived at the ferry house of defendant at about 6 o'clock in the evening, and found a large crowd outside of the passenger's entrance, and the gates used for the egress and ingress of vehicles.  While waiting there the crowd kept increasing, so that he was hemmed completely in.  After a while, the gates were forced open by the crowd in front of plaintiff, and he was carried along against his will by the people pressing on behind him, to a point some four or five feet inside the gate.  At that point, the crowd spreading, plaintiff was left standing alone, and while adjusting his eye glasses, and watching the crowd running and shouting, a deck hand came up to him.  Plaintiff's account of the assault is as follows:  "The deck hand said, 'What are you doing here?' and with that he grabbed me by the coat,— my overcoat that I had on,—and I said, 'Well, you take your hands off me.'  Says he, 'What are you doing here?' I says, 'I am here because I was brought in; take your hands off me;' and he did take his hands off me, and, as he took them off, I turned slightly.  So he turned and said to Mr. Chappell, 'Here is one of them.'  I think that is the word he used; and he says, 'Well, we will put him out anyway;' and Mr. Chappell caught hold of me in here; that is, through my shirt collar and my overcoat collar here.  I says, 'Take your hands off me;' and he says, 'I will put you out.'  I says, 'I am willing to go out, or I am willing to pay my fare;' and I had three cents in my hands at the time, for I had changed some money in buying the Sun, and, so that I could pass quickly through the gates, I had kept the change in my hands.  When I was outside, I bought the paper.  When I told him to take his hands off me, that I was willing to go or pay my fare, he said, 'No; we will put you out.  Open those gates.'  They opened the exit gates for passengers on the left-hand side, and he shoved me, pushed me, with his hand on my collar, towards the gates twelve or fifteen feet.  About twelve feet he had to take me to the side.  I was more directly in front of the gate.  He handled me very roughly, and strode along.  He was exceedingly angry at the time.  *Question.*  What was he saying, if anything?  *Answer.*  Well, this is about what he said:  'We will put you out.  We will put you out,'— repeating it.  When I got to this gate, it was opened partially, and he gave me a push through, and I staggered along on my feet, till I gained my

*equilibrium,* and then I *straightened up.* I didn't *fall.* That was all that happened." For this assault, as before stated, the jury gave plaintiff a verdict of $1,500.

We are well aware that courts are reluctant to disturb the verdict of a jury. It is entitled to be treated with consideration and respect. But when it is manifestly unjust, and it appears to be excessive, and the result of a preverted judgment on the part of the jury, it is the duty of the court to interfere, and to modify it in accordance with the demands of justice or to grant a new trial. We think that injustice has been done to the defendant by this verdict, and in arriving at that conclusion we have not taken into consideration the evidence adduced on the part of the defendant denying the assault. On that issue the jury have found in favor of the plaintiff, and their finding in that respect should stand. In assessing damages, however, we think, on plaintiff's own statement of the assault, that it is plain that the jury have gone beyond what we regard as a fair compensation to the plaintiff for the injuries he has suffered, and have awarded to him a larger sum than he is fairly entitled to recover. There was no evidence of malice or ill will on the part of the defendant, and, in the absence of such evidence, plaintiff was not entitled to recover punitive damages. *Newman* v. *Railroad Co.,* (Sup.) 7 N. Y. Supp. 560. By the charge of the learned trial judge, the jury were limited on the evidence in the case to compensatory damages only, and no exception was taken thereto, and they were expressly charged that they could not award punitive damages. It seems to us that the jury must have overlooked or disregarded this portion of the charge in assessing plaintiff's damages. We think that the verdict should be reduced to $1,000, and, as modified, should be affirmed, and that, unless plaintiff stipulates to reduce the verdict to that amount, the judgment should be reversed, and a new trial ordered. Judgment and order denying motion for a new trial reversed, and new trial ordered on payment of costs, unless plaintiff stipulates to reduce the verdict to $1,000, and the extra allowance to $50, in which event the judgment as modified, and the order denying motion for a new trial, are affirmed, but without costs.